JUANITA BIXBY, appellant, v. GORDON BIXBY, appellee.

No. 50603.

JUNE 12, 1962.

Lake M. Crookham, of Oskaloosa, for appellant.

Harold B. Heslinga, of Oskaloosa, for appellee.

PETERSON, J.—The parties in this action were divorced on February 26, 1959. They stipulated as to property division and under the stipulation defendant agreed to pay plaintiff $200 per month alimony. In August 1960 defendant made application for modification of the decree as to payment of alimony. The trial court reduced the alimony payment from $200 to $150 per month. Defendant paid the $150 regularly to and including January 1961. Starting in February 1961 defendant failed to make his payments in full and by April was $415 in arrears. On April 28, 1961, defendant filed another petition and motion for reduction of alimony. On May 24, 1961, plaintiff filed information and application for rule to require defendant to

show cause why he should not be held in contempt of court and supported such application by affidavit.

On June 6, 1961, the application for contempt and the motion for reduction of alimony were tried at the same time and the evidence of the parties was applied by the court to each proceeding as far as pertinent. On June 12, 1961, the trial court filed findings of fact and judgment entry dismissing the application for contempt and reducing the alimony payments from $150 per month to $75 per month. Plaintiff filed appeal. Defendant contended the alimony should have been reduced to $25 per month, and filed cross-appeal.

There are only two questions in this case: 1. Does this court have jurisdiction to consider an appeal from an order refusing to punish for contempt? 2. Was the trial court justified in modifying the decree in this case, and if so, was the reduction in amount fixed by the trial court justified and correct?

I. The trial court under the testimony failed to hold defendant in contempt of court. Appellant contends that under section 665.11, Code of Iowa 1958, this question should be raised in this court by certiorari. Under said section this rule only applies in case of punishment for contempt.

Under rule 352, Rules of Civil Procedure, the court can consider questions of this type in either manner. Under the record and all the circumstances of this case we approve the ruling of the trial court.

II. We start from the premise that when a divorce case is tried, and decree entered, all questions of custody, alimony and support money are adjudicated and established as of such date. Any modification thereafter shall be based on substantial change in conditions.

In Newburn v. Newburn, 210 Iowa 639, 641, 231 N.W. 389, this court stated: "It has always been held that the original decree is conclusive upon the parties as to the then circumstances of the parties, and that the power to grant a modification in the decree is not a power to grant a new trial, or to retry the same issues, but only to adapt the decree to the changed conditions of the parties. * * * Keyser v. Keyser, 193 Iowa 16 [186 N.W. 438]; McNary v. McNary, 206 Iowa 942 [221 N.W. 580]; Morrison v. Morrison, 208 Iowa 1384 [227 N.W. 330];"

eleven other cases cited. Also see our recent case of Jensen v. Jensen, 253 Iowa 1013, 114 N.W.2d 920.

Section 598.14, 1958 Iowa Code, provides:

"When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right.

"Subsequent changes may be made by it in these respects when circumstances render them expedient."

This court has held, in several cases, that the remarriage of the husband, coupled with the obligations assumed thereby, does not alone constitute such change in the circumstances of the parties as is contemplated by the statute. Newburn v. Newburn, supra; Stone v. Stone, 212 Iowa 1344, 235 N.W. 492, 494; Siders v. Siders, 227 Iowa 764, 288 N.W. 909; Apfel v. Apfel, 238 Iowa 274, 27 N.W.2d 31.

This second application for modification was filed April 28, 1961. The time element between the two applications is comparatively short. This application was tried on June 6, 1961, ten months after trial on the previous application.

On trial of the previous application the trial court held that defendant's health was bad and that he was spending $80 per month for medical help. The court also held that between the time of the divorce decree and August of 1960 plaintiff had become employed at her work as a registered nurse and was earning approximately $200 per month net. Defendant had remarried and his new wife was expecting a baby.

As to the defendant's health it had apparently improved. In the case at bar he testified: "My health condition does not keep me from working. It has in the past, but isn't at the present time. In March I had to go away for two weeks. That was March of last year, 1960. Since then I have been working steadily." Plaintiff was working in June 1961 at the same work, and for approximately the same salary as in August 1960.

The only basis on which the trial court could consider a change in circumstances since August of 1960 was the fact that Mercy Hospital at Oskaloosa, at which defendant had been working for several years, closed on March 1, 1961. It became necessary for defendant to find a new place to work. He is an anesthetist.

In April of 1961 he moved to Pella, and he is now working primarily at the Pella Hospital. He still does some work at Mahaska Hospital at Oskaloosa, but this is not a satisfactory situation because his hours of work as between the two hospitals seriously conflict. Defendant was curtailed in his work because at time of trial they had no surgeon at Pella. They were searching for one.

The record does show that during the three months prior to the modification in August of 1960 his earnings were as follows: June $925; July $930; August $895. In the three months in 1961 prior to this trial defendant earned: March $1061; April $760; May $710.

It is our opinion that to a large extent defendant's difficulty as to failure to pay plaintiff her alimony is the fact that he has assumed a heavy responsibility for the maintenance of a new family.

Defendant's new wife had two children, 7 and 10 years of age at time of trial. We cannot hold the obligation of their support as prior to his obligation to the first wife. He now has the new child referred to in the modification of August 1960. There is an obligation on his part to support his new child. In Morrison v. Morrison, supra, at page 1388 of 208 Iowa, we said: "He had the legal right to remarry, and the law recognizes marriage as a civil contract, founded on public policy. The three children are not responsible for their existence, and are necessarily dependent upon their father for support."

The testimony discloses that defendant's second wife and her two children are the owners of a property in Oskaloosa from which she collects $60 per month rent. She has to pay the taxes, insurance and repairs. She contributes the net amount of the rent to the expenses of the household. This is not sufficient to maintain her and the two children.

There is one matter disclosed in the testimony where defendant is wrong, and he and his new wife can correct the situation and materially improve their condition. The two children receive someplace between forty and seventy dollars per month social security because of the death of their father. Defendant did not know the exact amount, except it was within the

above range. He testified that this money was being regularly deposited in a savings account in order to build up.a fund for the future education of the two children. This is a laudable ambition, but should not be carried out at the expense of plaintiff. Instead of using this money to help support the two children, defendant supports them, and failed to pay plaintiff her alimony to that extent. Defendant can meet this educational situation when the time comes.

Defendant's earning capacity, because of his specialty, is substantial. In 1959 he had a net income in excess of $10,000. He still has his ability to work at his profession and his health now seems to be satisfactory. He has now been at Pella for over a year, and with his specialty he either has reestablished himself, or within a short time should do so.

There seems to be some confusion in the record and in the minds of counsel as to the $415 or more of delinquent alimony money. The fact that the trial court did not hold defendant guilty of contempt and made a statement that he had paid all he could pay during March, April and May does not in any manner relieve defendant of his obligation as to past unpaid alimony. The judgment stands against him, and in due course he must pay this past alimony, and other alimony in arrears. If at any time hereafter his earnings become such that he is able to make such payment, and he fails to do so, he will be subject again to the charge of contempt of court.

There was some substantial change in circumstances because of the closing of Mercy Hospital, but there was not sufficient change to justify the drastic modification made by the trial court. Instead of the alimony being reduced to $75 per month, we hold it should only be reduced to $100 per month from June 1, 1961, and the trial court's decree is modified accordingly. Defendant's prayer for reduction to $25 per month is denied.

III. Plaintiff's counsel suggests this court should announce a rule that when an application is filed for contempt of court by reason of nonpayment of alimony or support money, the party obligated to pay such alimony should not be permitted to have hearing on an application for modification until he has purged himself as to contempt. This court cannot establish such a rule.

1178

The decree of the trial court as to plaintiff's appeal is modified and affirmed; as to defendant's cross-appeal, we affirm.—Modified and affirmed.

All JUSTICES concur.